NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1725
_____

UNITED STATES OF AMERICA

v.

JOSHUA PETERS,
                    Appellant
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2-22-cr-00220-001)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 4, 2024

Before:  JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: March 14, 2024)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

A jury convicted Joshua Peters of one count each of drug trafficking, possession of

a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

and ammunition. Peters challenges his convictions and the District Court's application of a sentencing enhancement for obstruction of justice. Because his arguments lack merit, we will affirm.

I. **BACKGROUND**

Peters was a drug dealer who trafficked large quantities of cocaine and fentanyl in Mercer County, Pennsylvania. Following a series of controlled purchases by a confidential informant, police executed a search warrant at Peters's home and found drugs and drug paraphernalia, money, and six firearms, plus ammunition. [The Commonwealth of Pennsylvania charged Peters with essentially the same crimes for which he was later federally prosecuted.

The United States adopted the case, and a federal grand jury indicted Peters for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). He had a prior felony conviction in Pennsylvania for possession with intent to distribute cocaine and had been sentenced to not less than 182 days' and not more than 12 months and two days' imprisonment.

On September 2, 2022, federal law enforcement attempted to arrest Peters at his parents' residence, but he was not there. At that time, however, officers spoke with Peters on the phone and arranged for him to turn himself in. He never did. Peters was scheduled to appear at a corresponding proceeding in state court on September 7, so

2

officers tried to arrest him then, but he failed to appear. Eventually, at around 3:00 am on September 9, police arrested Peters in a convenience store parking lot.

The District Court set trial for December of 2022. Before trial, Peters filed a motion in limine to bar the government from introducing evidence that he had not obtained fingerprint and DNA tests on the recovered firearms. He argued that such evidence would constitute improper burden shifting, allowing a jury to infer that he could have proved his innocence by having the guns tested. The Court granted the motion in part. It stated, "if [Peters] here puts on … evidence to show that the Prosecution did not test the weapons at issue for fingerprints or DNA, the Government may use its closing argument to issue a comment that points to a lack of testing conducted by either party." (App. at 12.)

During trial, the government asked its final witness, City of Hermitage police officer Marc Frampton, whether the evidence found inside Peters's home "was … made available for testing by the defense?" to which Frampton answered, "Yes." (App. at 211.) Peters's counsel objected, citing the Court's pre-trial ruling, and moved for a mistrial. The Court overruled the objection, finding that the question did not violate its prior order.

The government also put on evidence regarding Peters's knowledge of his prior state felony conviction and sentence, which precluded him from owning a gun. The parties stipulated that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. The government introduced testimony from someone who spoke with Peters about Peters's inability to lawfully own a firearm (App. at 158 ("Mr.

3

Peters told me he was a felon and he was not allowed to own guns.")), as well as testimony from Officer Frampton that in the Mercer County Court of Common Pleas, where Peters was sentenced, the "[s]tandard practice" is that a defendant learns of his or her sentence when the judge reads it in open court (App. at 177-78). The government also entered into evidence Peters's sentencing order, which states that "[t]he defendant is required to undergo incarceration for a period of not less than 182 days, nor more than 12 months and 2 days." (App. at 177, 352.)

The government rested and Peters moved for judgment of acquittal on the firearm offenses, which the Court denied. The following day, both sides gave closing arguments. In closing, Peters's counsel asked why the government did not test the recovered bullets for fingerprints. As a result, on rebuttal, the government noted that "all [of] the evidence … was made available for defense testing as well. If the defense thought that there was something meaningful … the defense could have tested it[.]" (App. at 298.) Peters renewed his motion for a mistrial, but the Court denied it.

The jury convicted Peters on all three counts of the indictment. [The District Court scheduled sentencing and Peters filed objections to his Presentence Investigation Report, particularly a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. At sentencing, the Court overruled the objection and applied the enhancement, finding as fact that Peters evaded arrest on September 2 and that he failed to appear at his state court proceedings despite knowing of the federal arrest warrant. The Court sentenced Peters to two 120-month terms of imprisonment, to run concurrently, and one

4

60-month term of imprisonment, to run consecutively, and a three-year term of supervised release. This appeal timely followed.

## II. DISCUSSION[1]

Peters challenges his convictions and sentence, arguing that the District Court should have granted his motion for a mistrial, that there was insufficient evidence for his felon-in-possession conviction, and that the Court incorrectly applied an obstruction-of-justice sentencing enhancement.

### 1. The District Court correctly denied Peters's motions for mistrial.[2]

Peters challenges his convictions, arguing that the District Court should have granted a mistrial because the government improperly shifted the burden of proof by introducing evidence that he did not conduct forensic testing on the recovered firearms.

It is well settled that prosecutors "may not improperly suggest that the defendant has the burden to produce evidence." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). But, when the defense advances an argument, the prosecution may make, in closing, a "comment that points to a lack of evidence in the record which supports … [that] argument," *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998), or one that "attempt[s] to focus the jury's attention on holes in the defense's theory." *Balter*, 91 F.3d at 441.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] We review a denial of a motion for mistrial for abuse of discretion. *United States v. Noble*, 42 F.4th 346, 354 n.9 (3d Cir. 2022).

The government, during direct examination, asked one question of Officer Frampton regarding fingerprint testing: "Was the evidence that was found inside [Peters's house], was that made available for testing by the defense?" (App. at 211.) Frampton replied, "Yes." (App. 211.) Peters objected and moved for mistrial on the basis that he had been careful not to previously introduce evidence related to the lack of testing or fingerprints.[3] The government argued in opposition that the order directed what it was allowed to argue in closing and "[w]ithout that question, there would be no foundation for the comment that th[e] [C]ourt authorized [it] to make in closing[,]" should Peters open the door. (App. at 212.) The Court sided with the government and overruled the objection. Even if the question violated the Court's pretrial order, which we need not decide, the Court did not abuse its discretion by denying the motion for a mistrial. Viewing the record as a whole, that single question did not shift the government's burden; it preserved for the government the possibility of noting the lack of testing in closing.

Later, during closing argument, Peters's counsel asked the jury: "You know how you prove beyond a reasonable doubt pretty conclusively who possessed things? Test it." (App. at 283.) While noting that Detective Eric Harpster testified regarding the futility of

---

[3] This is not exactly so. Peters, not the government, actually first elicited testimony about fingerprint testing during his cross-examination of Detective Eric Harpster. Counsel asked that if Harpster was to find a gun, he "wouldn't just pick it up with your bare hands, [he] would pick it up with like a pen or glove. Right?" to which Harpster replied, "No," because he wouldn't worry about trying to get a fingerprint off a gun. (App. at 93-94.) But, he continued, "[s]ometimes if you're going to get … a print, you'll get the print off the bullet." (App. at 94.)

attempting to fingerprint firearms, Peters argued that the government could have pulled prints "[o]ff of bullets[,]" as Harpster suggested, and asked again, "Why didn't they test that? Why did they leave that to your imagination? What are they concerned about?" (App. at 284.)

Only on rebuttal did the government then note that the "physical evidence … was made available for defense testing as well. If the defense thought that there was something meaningful – you actually could get something meaningful from that evidence, the defense could have tested it as well." (App. at 298.) It made those comments shortly after reminding the jury that "the defense has no obligation to present evidence." (App. at 296.)

Peters moved for a mistrial again after closing, arguing that he did not put on a case and only made an argument about the lack of evidence. The government responded that Peters presented evidence about fingerprinting in cross-examination and, during closing, implied that additional testing should have been done, which made the rebuttal proper. The Court sided with the government and denied the motion because it "believe[d] the argument made by prosecution in closing was proper and did not in any way imply or shift the burden of proof to the defendant." (App. at 304.) There was no abuse of discretion in that ruling. *Walker*, 155 F.3d at 187.

In denying Peters's motion, the District Court correctly noted that the "preliminary and final instructions [made] it very clear, as did [its] questioning of the jurors when [the parties] selected the jury, that the burden all remains with … the government and never shifts." (App. at 304); *cf. United States v. Franz*, 772 F.3d 134, 152 (3d Cir. 2014)

7

("Absent … extraordinary situations, … we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions." (first alteration in original) (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985))). The Court informed the jury at least four times that "[t]he presumption of innocence means that Mr. Peters has no burden or obligation to present any evidence at all or to prove that he's not guilty. The burden … is on the government[.]" (App. at 316.) Additionally, during closing argument, the government reminded jurors that it maintained the burden of proof through the trial, and the defense gave the same reminder in its opening and closing. Therefore, as the District Court stated, "the record [was] really clear … that the burden [was] not on the defendant, that [it was] on the government and remain[ed] there." (App. at 304.) The Court did not abuse its discretion in denying the motion for a mistrial.

> 2. *There was sufficient evidence to support Peters's conviction under 18 U.S.C. § 922(g)(1).*[4]

Peters also argues that his felon-in-possession count must be vacated because the government presented insufficient evidence to demonstrate that he knew he was previously convicted of a crime with a sentencing exposure of more than one year. His entire argument turns on the claim that, while he knew he was a felon, he did not know

---

[4] "We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (internal quotation marks and citation omitted). "Under this particularly deferential standard, we must … not … usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury" and must "review the evidence as a whole, not in isolation[.]" *Id.* (internal quotation marks and citations omitted).

8

that he was sentenced to a term of imprisonment of more than one year. That argument fails.

"[T]he Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). Section 922(g)(1) of title 18 of the United States Code makes it "unlawful for any person who has been convicted … of a crime punishable by imprisonment for a term exceeding one year" to "possess … any firearm or ammunition[.]" (cleaned up). "[I]f the maximum term of imprisonment authorized is … more than one year," the offense "is classified … as a … felony[.]" *Id.* § 3559(a)(5). In *Greer v. United States*, the Supreme Court expanded on the knowledge-of-status requirement, holding that "[i]f a person is a felon, he ordinarily knows he is a felon. … Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon." 593 U.S. 503, 508-09 (2021). "*Greer*, in effect, created a presumption that the 'knowledge-of-status' element is satisfied whenever a § 922(g)(1) defendant is, in fact, a felon." *United States v. Adams*, 36 F.4th 137, 152 (3d Cir. 2022). Here, evidence introduced at trial showed that Peters knew he was a felon. (App. at 158 ("Peters told [the witness] he was a felon and he was not allowed to own guns[,]" due to his possession with intent to deliver crack cocaine conviction).) There is nothing in the record to suggest that *Greer*'s presumption does not apply.

Furthermore, Peters's professed ignorance does not stand up to scrutiny. The order imposing his sentence, which was entered into evidence, states explicitly that "this

9

6th day of November 2020, IT IS THE SENTENCE OF THIS COURT on Possession With Intent to Deliver a Controlled Substance, … that …the defendant undergo incarceration for a period of not less than one hundred eighty-two (182) days nor more than twelve (12) months and two (2) days."[5]  (App. at 352.)  Officer Frampton also testified that in Mercer County defendants learn of their sentences in open court and that Peters had pled guilty to the possession charge in Mercer County.  Therefore, the jury had ample evidence from which to find that Peters had knowledge not only of his felon status but also that his crime was punishable by imprisonment exceeding a year.

"Review[ing] the evidence as a whole, … a rational trier of fact" could have found "guilt beyond a reasonable doubt."  *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (internal quotation marks and citation omitted).  Accordingly, we will affirm the felon-in-possession conviction because "there is substantial evidence … to uphold the jury's decision."  *Id.* (citation omitted).

> 3.   *The District Court correctly applied a sentencing enhancement for obstruction of justice.*[6]

Peters also challenges the District Court's application of a sentencing enhancement for obstruction of justice based on his evasion of arrest.

---

[5] The parties also stipulated that "as of March 15, 2022, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year."  (App. at 178.)  *See Greer v. United States*, 593 U.S. 503, 509 (2021) (finding that a defendant "stipulat[ed] to the fact that he was a felon" and his "prior convictions [were] substantial evidence that [he] knew [he] w[as a] felon[]").

[6] In reviewing an application of a sentencing enhancement, we "exercise[] plenary review over the District Court's legal conclusions and review[] the District Court's

10

Section 3C1.1 of the sentencing guidelines increases a defendant's offense level "[i]f (1) the defendant willfully obstructed or impeded … the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]"[7]  In *United States v. Imenec*, we affirmed the district court's application of § 3C1.1 to a defendant who failed to appear at a state court judicial proceeding when the effect was to avoid or delay his federal arrest.  193 F.3d 206, 208, 210 (3d Cir. 1999).  We held that "the Sentencing Commission's intent was to impose an enhancement for any conduct that obstructs an investigation, prosecution or sentencing proceeding that is based on the criminal conduct underlying the specific statutory offense for which the defendant is being sentenced." *Id.* at 208.

At sentencing, the Court heard testimony from narcotics agent Scott Patterson from the Pennsylvania Attorney General's office who testified regarding the state and federal proceedings against Peters and law enforcement's attempts to arrest him for the

---

factual findings for clear error."  *United States v. Gray*, 942 F.3d 627, 630-31 (3d Cir. 2019).

[7] Peters argues that we should instead be guided by § 3C1.1's commentary.  He, however, fails to demonstrate the provision's ambiguity before turning to the commentary, as required by *United States v. Nasir*, 17 F.4th 459, 469-70 (3d Cir. 2021) (en banc).  We decline to make such arguments for him.  *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing.").

federal crimes. After finding Patterson credible, the Court found as a fact that, on September 2, Peters spoke with a law enforcement officer who informed him that a federal warrant had been issued for his arrest and further that Peters told the officer he would turn himself in. Peters never did. On the contrary, despite attending his prior state court proceedings, Peters did not attend a proceeding five days later on September 7, when it was likely federal law enforcement officers would arrest him. The District Court thus justifiably found that Peters was evading arrest and that his actions "required that law enforcement separately apprehend [him]." (App. at 480.)

Based on the record before us, we cannot conclude that the Court clearly erred in so finding. Peters's objection was properly overruled, and the sentencing enhancement properly applied.

## III. CONCLUSION

For the foregoing reasons, we will affirm Peters's conviction and sentence.